(210 P.3d 132)

No. 100,810

STATE OF KANSAS, *ex rel.,* RODERICK L. BREMBY, SECRETARY, KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, *Appellee,* v. KIP L. THORSON, *Appellant.*

Opinion filed June 19, 2009.

*Kip Thorson,* appellant pro se.

*Nancy L. Ulrich,* of Kansas Department of Health and Environment, of Toepka, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: When a state agency seeks to enforce its final order by filing an enforcement action in the district court, can the defendant raise, as a defense to the enforcement action, that the final order was wrongly decided? Because of res judicata principles, we hold the defendant cannot.

*The case history reveals a loss of permit and subsequent closure of a tire removal facility.*

For some time, Kip. L. Thorson kept a waste tire collection center at the Great Bend Airport in Barton County. In December 2000, the Kansas Department of Health and Environment, the state agency with jurisdiction over waste tires (according to K.S.A. 65-3424 *et seq.*), decided to revoke his permits and ordered Thorson to stop all of his waste tire collection activities in Kansas. Then, in November 2001, the agency ordered Thorson to remove all of his waste tires and bales of processed tires stored at the airport.

Not wanting to drop the matter, Thorson pursued his administrative remedies. First, he requested an administrative hearing, which he received in June 2002. Ultimately, the presiding officer upheld the removal order. But, Thorson did not stop there, he appealed the case to the Secretary of the Kansas Department of Health and Environment. In February 2003, after reviewing the matter, the Secretary found Thorson to be the only party liable for removing the waste and issued the agency's final order. After the Secretary denied Thorson's request to reconsider, Thorson decided to go to court.

Now seeking judicial intervention, Thorson filed a petition for judicial review of agency action in Barton County District Court in April 2003. About a year later, on April 5, 2004, the court dismissed Thorson's petition after he failed to appear at a case management conference.

Following the dismissal, the agency took steps to clean up the site by the authority granted the agency in K.S.A. 65-3424k. In August and September 2006, contractors hired by the agency, as well as agency employees, removed the waste tires. With the cleanup done, the agency demanded almost $14,000 from Thorson to cover its expenses. When Thorson failed to pay within 30 days of the demand, the agency went to court to recover its clean-up costs.

The agency filed a civil action in the district court of Shawnee County in July 2007 to enforce its final action. Citing K.S.A. 77-624 as authority, the agency sought repayment of about $7,800 for

tire removal costs from Thorson. The agency lowered the amount requested in its original demand to Thorson after deciding the bales of tires should be considered solid waste, which has a lower disposal expense. In the proceeding for civil enforcement, Thorson's primary defense consisted of challenging the validity of the agency's final order. The district court, however, declined to consider this defense as proper in a civil enforcement action. The agency sought summary judgment. Thorson did not contest any of the factual contentions of the agency. Eventually, the district court granted summary judgment to the Kansas Department of Health and Environment, and from that judgment, Thorson appeals.

*The conflict between the parties centers on when a defense can be raised.*

On appeal, Thorson argues that the district court should have denied the agency's petition for civil enforcement because the reasoning supporting the Secretary's decision in its final order was flawed. Thorson contends the Secretary misinterpreted K.S.A. 65-3418(a) in finding him to be the owner of the waste tires; thus, in his view, the Secretary's final order was invalid. According to Thorson, the Secretary ignored the meaning of the statute by failing to find Patrick Schoendaler responsible for the removal costs. Schoendaler sold the business to Thorson. Both the presiding officer at Thorson's first administrative hearing and the Secretary in Thorson's administrative appeal weighed the testimony of Thorson and Schoendaler and ruled Thorson responsible.

The agency maintains that the district court in Shawnee County was not required to determine whether the Secretary misinterpreted K.S.A. 65-3418(a) in its final order because such an issue falls exclusively within the scope of a review of an action for judicial review and not an action for civil enforcement. The state agency contends that because Thorson challenged the Secretary's final order in a petition for judicial review in Barton County that was later dismissed, the only issue properly before this court is whether the district court erred in granting its motion for summary judgment requesting enforcement of the Secretary's final order.

To resolve this dispute, we must decide if a defendant can collaterally attack an agency's final order in a civil enforcement action. For the reasons that follow, we hold the defendant cannot.

*We list our standard of review and some pertinent statutes.*

Our standard of review of summary judgments is well settled:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" ' [Citation omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

When dealing with statutory interpretation and related legal questions, our standards allow us some freedom. Resolution of this matter requires an interpretation of the statutes contained in the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). K.S.A. 77-601 *et seq*. We apply unlimited review of such interpretations. See *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 270, 130 P.3d 555 (2006). When construing statutes in an effort to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia*, with a view of reconciling and bringing the provisions in workable harmony if possible. See *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008).

*Next, we examine the act dealing with state agencies and judicial actions.*

The Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (Act) is found in K.S.A. 77-601 through 77-631. The Act can be roughly divided into two sections, first K.S.A. 77-601 to 77-623 focuses on judicial review of agency actions. The

second section, K.S.A. 77-624 to 77-631, concerns civil enforcement of agency actions.

It is clear from reading the entire Act that the two actions, filing a petition for review of an agency action and filing a petition for civil enforcement, are meant by the legislature to be distinct actions with different goals, separate procedures, and different defenses. For example, K.S.A. 77-610 sets out the form of action for judicial review, while K.S.A. 77-624 describes the form for civil enforcement. Also, K.S.A. 77-617 limits what matters can be brought up in an action for judicial review, while K.S.A. 77-625 lists the defenses that can be raised in a civil enforcement case such as this. We note that a petition for judicial review is filed by one aggrieved by an agency action, while a civil enforcement petition is filed by the agency.

Because this case arises from a civil enforcement action, we look at the provisions of the Act dealing with such lawsuits. K.S.A.77-625, controls this case because it limits what defenses may be raised in this action. It provides for four defenses:

"A defendant may assert, in a proceeding for civil enforcement, any of the following defenses on which the court, to the extent necessary for the determination of the matter, may consider new issues or take new evidence:
"(a) The rule and regulation or order does not apply to the party;
"(b) the party has not violated the rule or order;
"(c) the party has violated the rule and regulation or order but has subsequently complied, but a party who establishes this defense is not necessarily relieved from any sanction provided by law for past violations; or
"(d) any other defense allowed by law."

Obviously, with the exception of the general "catch-all" language in subsection (d), the only defenses that can be raised are factual. Said another way, orders, rules, or regulations that are being enforced in these types of cases are not the subject of the litigation. Instead, the question is whether the defendant is subject to the order, rule, or regulation. These are defenses attacking jurisdiction. An attack on the underlying order is not on the list.

On the other hand, the Act at K.S.A. 77-621(c) permits the court *in a judicial review action* to make a much broader inquiry into the action of the state agency:

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) *the agency has erroneously interpreted or applied the law*;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious." (Emphasis added.)

Thorson tried vainly to have the court review the case under K.S.A. 77-621(c)(4), but the district court correctly ruled that it could not. Simply put, those remedies are available in a judicial review action, not a civil enforcement action.

The Kansas Supreme Court has tacitly recognized the differences between the two actions in *Sebelius v. LaFaver*, 269 Kan. 918, 9 P.3d 1260 (2000), a case seeking to determine if the Kansas Workers Compensation Fund could issue a subpoena to the Custodian of Records of the Kansas Department of Revenue to obtain tax records and employee withholding records. The court stated:

"The district court pointed out that KDR's argument ignored the distinction between actions for judicial review and actions for civil enforcement of an agency action pursuant to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Actions for judicial review are governed by K.S.A. 77-606 to K.S.A. 77-623. K.S.A. 77-624 to K.S.A. 77-627 govern civil enforcement of an agency action. The provision relied upon by KDR, K.S.A. 77-613(d), related to a petition for judicial review of agency actions.

"The district court noted that the relief sought in the petition was an order enforcing the order of the ALJ; therefore, *the provisions of K.S.A. 77-613(d) did not apply to the Fund's petition, which sought enforcement of an order.* The agency action to be reviewed was KDR's refusal to comply with an order. The district court found that because the agency's refusal was continuing, the Fund's petition was timely filed." 269 Kan. at 920.

By recognizing the distinction made by the district court and then affirming, we view the holding as tacit approval even though the case was decided on other grounds.

We believe our holding reinforces res judicata principles. "Res judicata precludes a second administrative proceeding when the first administrative proceeding provides the procedural protections similar to court proceedings when an agency is acting in a judicial capacity." *Parker v. Kansas Neurological Institute*, 13 Kan. App. 2d 685, 686, 778 P.2d 390, *rev. denied* 245 Kan. 785 (1989). Thorson participated in every step of the administrative procedures dealing with his case and then properly sought judicial review. His failure to appear in court closed the door to the relief he desired. He cannot raise the same issue in this enforcement action.

A similar ruling has previously been made by a court in Iowa. A panel of the Iowa Court of Appeals, after recognizing the distinction between judicial review for a party aggrieved by an agency order and civil enforcement, a method to seek a court order to enforce an agency order — refused to entertain an attack on the final agency order in the enforcement action. The court ruled res judicata barred the defense. *State ex rel. Iowa Dept. of Natural Resources v. Shelley*, 512 N.W.2d 579 (1993).

We hold the district court correctly ruled Thorson could not collaterally attack the final agency order, and properly granted summary judgment.

In his final issue on appeal, Thorson complains about being forced to pay attorney fees. The problem with that complaint is that we cannot see where any attorney fees were granted to the agency. To the contrary, the facts show that the district court did not assess attorney fees against Thorson. In its summary judgment, the district court entered a judgment in the amount of $7,849.76 and court costs. A review of the record verifies that the amount of $7,849.76 embodied only the costs incurred in removing the waste tires: "The cost per ton KDHE paid to abate and dispose of all

'waste tires' was $71.00 per ton. The contractor removed and disposed of 110.56 tons of waste tires." Simple arithmetic shows the court ordered only cost reimbursement and no attorney fees.

Affirmed.